**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **SEMICONDUCTOR COMPONENTS** **INDUSTRIES, LLC,** | ) ) | **CASE NO.:  5:24-cv-02215** |
| | ) | **CHIEF JUDGE SARA LIOI** |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | |
| **LA SEMICONDUCTOR LLC, *et. al.,*** | ) ) | |
| **Defendants.** | ) ) ) | |

**STIPULATED AND AGREED ORDER APPOINTING RECEIVER**

This matter initially came on for consideration of the *Plaintiff's Emergency Motion for Appointment of a Receiver* [ECF No. 3] (the "**Receiver Motion**") and *Plaintiff's Motion for an Ex-Parte Hearing on Its Motion for Emergency Appointment of a Receiver* [ECF No. 4] (the "**Ex-Parte Motion**" and collectively with the Receiver Motion, the "**Motions**"), filed by Plaintiff Semiconductor Components Industries, LLC ("**onsemi**") for the *ex parte* appointment of a receiver over all assets and to oversee and manage the current and future assets, properties, and undertaking, of every nature and kind, whatsoever and wherever situated, and all proceeds thereof of Defendants (i) LA Semiconductor LLC ("**LAS**" or the "**Company**"); (ii) Linear Asics Inc. ("**Linear**"); and (iii) Mike Ward ("**Mr. Ward**" and collectively with LAS and Linear, the "**Defendants**") to the extent associated with maintaining and operating the Pocatello, Idaho located wafer manufacturing facility (the "**Fab**") and related equipment (the "**Equipment**").  Upon review of the Motions, the two declarations of Peter Buckles, Director of Mergers and Acquisitions and Securities of onsemi (the "**Buckles Declarations**"), and Dr. Brian Kushner of FTI Consulting, Inc., (the "**Kushner Declaration**" and with the Buckles Declarations, the "**Declarations**") in support thereof, telephonic hearings and representations from onsemi's counsel, and the record in this case, the

Court entered its *Temporary Order Appointing Receiver with Limited Powers* [ECF No. 7] (the "**Temporary Receiver Order**") on December 21, 2024, which among other things, (i) granted, authorized and vested FTI Consulting Inc. ("**FTI**") with certain and specific powers, rights, and duties provided under the United States Code, the Federal rules of Civil Procedure, the Local Rules, and other applicable laws to operate the Company's business in the ordinary course and to maintain the status quo, (ii) required FTI to file reports regarding its receipts and expenditures and acts and transaction as receiver, and (iii) scheduled a hearing on January 3, 3025 at 1:00 p.m. E.T. (the "**Original Hearing Date**") to further consider the Motions.

On December 23, 2024, FTI filed its *Notice of Oath of Receiver* [ECF No. 9], accepting the Court's appointment as Receiver of LAS and solemnly swears and affirms to faithfully discharge the duties and obligations of a receiver.

On January 2, 2025, attorneys Justin A. Markota and John J. Rutter of the law firm Roetzel & Andress, LPA filed their Notice of Appearance [ECF No. 15] on behalf of the Defendants in this matter and sought to continue the Original Hearing Date [ECF No. 16] (the "**Motion to Continue**"), which request was unopposed by onsemi.  This Court subsequently continued the Original Hearing Date until January 27, 2025 [ECF No. 18].

On January 17, 2025, Defendants' counsel filed their *Motion for Leave to Withdraw as Counsel for Defendants LA Semiconductor LLC, Mike Ward and Linear Asics Inc.* [ECF No. 26] (the "**Motion to Withdraw**") and its *Motion to Extend Temporary Order Appointing Receiver with Limited Powers, Continue Hearing Regarding Appointment of Receiver and Extension of Time for Defendants to File Response to Verified Complaint* [ECF No. 27] (the "**Second Motion to Continue**").  onsemi did not oppose the Motion to Withdraw or Second Motion to Continue and the Court granted the Motion to Withdraw [ECF No. 32] and granted the Second Motion to

Continue [ECF No. 31], which reset the hearing to consider the Motions on February 19, 2025 at 9:00 a.m. (the "**Rescheduled Hearing Date**").

On February 11, 2025, Nicholas P. Capotosto and Jenna J. Pletcher of Dinsmore & Shohl LLP filed their Notice of Appearance [ECF No.37] on behalf of LAS and Mr. Ward, but not Linear and *Motion to Extend Temporary Order Appointing Receiver with Limited Powers, Continue Hearing Regarding Appointment of Receiver, and Extension of Time for Defendants to Filed Response to Verified Complaint* [ECF No. 38] (the "**Third Motion to Continue**").  Both onsemi and FTI opposed the Third Motion to Continue [ECF Nos. 40 and 41 respectively].

To resolve the Motions in advance of the Rescheduled Hearing Date, onsemi; LAS; and Ward (collectively, the "**Parties**") have reached an agreement regarding the terms and conditions of *Stipulated and Agreed Order Appointing Receiver* (this "**Receiver Order**").

WHEREAS, in consideration of the agreements by the Parties, the Court finds as follows:

A.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because the parties are of complete diverse citizenship and the amount in controversy is in excess of $75,000.  Venue is appropriate in this District because Defendant LAS and Defendant Ward each are domiciled in the Northern District of Ohio.

B.      On December 19, 2024, Plaintiff onsemi initiated this case by filing its *Verified Complaint for Temporary Restraining Order, Preliminary and Permanent Injunction, Declaratory Judgment and Other Relief* [ECF No. 1] (the "**Complaint**"), seeking, *inter alia,* redress for the alleged breaches of the Agreements[1], misrepresentations, and fraud of LAS relating to onsemi's sale of the Fab to LAS, which Transaction closed on or about October 14, 2022.  As explained in

---

[1] Capitalized terms used but not otherwise defined herein have the meaning ascribed to such terms in the Verified Complaint or the Motion, as the case may be.

the Agreements, LAS would continue to operate the Fab and would supply Products to onsemi for use by onsemi and onsemi's customers for a period of not less than five years.

C.      Since the closing of the Transaction, however, onsemi alleges that LAS has been and continues to be insolvent or otherwise financially unstable; has been unable or unwilling to pay its operating expenses, most of which have been voluntarily funded by onsemi in an effort to ensure LAS could continue to operate and supply Products to onsemi to avoid irreparable harm to onsemi and its customers; and further alleges that LAS has, through its sole member and CEO, Defendant Mike Ward, engaged in fraud by, among other things, falsifying its books and records to mask its dire financial condition, diverting funds and/or other assets of LAS to or for the benefit of Defendant Ward or other entities owned by him, and selling Products to other LAS customers that were manufactured using inputs paid for by onsemi for the sole purpose of supplying Products to onsemi.

D.      onsemi filed the Motion seeking appointment of FTI, through its team lead by Senior Managing Director Dr. Brian G. Kushner ("**Dr. Kushner**"), Ms. Nicole Horton ("**Ms. Horton**"), and Mr. Carl Jenkins ("**Mr. Jenkins**"), as receiver over the Company and the Assets (as defined below), in an effort to stabilize the operations of the Company, eliminate the alleged ongoing alleged fraud perpetuated by the Defendants, and ensure that the Products are available and provided to onsemi and its customers, which include the United States Department of Defense, in accordance with the Agreements.  FTI is experienced in the areas of distressed property and business management, receivership and, specifically, LAS.  The Parties have agreed under this Receiver Order, with all reservations contained herein, that the Court finds that FTI is qualified to serve as the Receiver in this matter.  Further, FTI has significant receivership experience and has

agreed to accept fees for its services and the services of its employees and operational consultants as set forth in Kushner Declaration attached to the Motion as Exhibit C.

E.     Ward and LAS dispute all allegations by onsemi made in this Receiver Order and as set forth in onsemi's Complaint. Ward and LAS reserve all rights to respond to the Verified Complaint as previously ordered by the Court and notwithstanding the terms of this Receiver Order, shall set up any defenses in their respective answers.

F.     This proposed receivership is a receivership over the assets, operations and activities of the Company, which specifically encompasses all property, known and unknown, wherever identified or located, of Ward and/or the Company relating to the business operations at the Fab, or such Company property held by Ward and/or the Company or any related or affiliated entities or other third parties.   An additional purpose of this Receivership is to maintain uninterrupted operation of the Fab and its business operations, pending further action by the Receiver.

G.     Federal courts typically consider the following factors when determining whether to appoint a receiver: "(1) whether more modest measures would adequately protect the movant; (2) whether legal remedies appear to be inadequate; (3) whether there is ongoing fraud or imminent danger of the property being lost, injured, diminished in value, or squandered; and (4) whether there had been a showing that the harm accruing to the movant by denial clearly overbalanced the harm to the nonmovant upon granting the appointment." *FTE Networks, Inc. v. Szkaradek*, Case No. CV 22-785-WCB, 2024 WL 4024696, at *3 (D. Del. Sept. 3, 2024) (quoting *KeyBank Nat'l Ass'n v. Fleetway Leasing Co.*, 781 F. App'x 119, 122 (3d Cir. 2019)) (internal quotation marks omitted).

H.     The Court finds that onsemi has alleged that there is an imminent danger that property will be concealed, lost, or its value diminished and that onsemi has a lack of legal remedies other than the appointment of a receiver and that legal remedies appear to be inadequate. The Court finds that, based on the agreement of the Parties, the appointment of a receiver in this action is appropriate.

I.     Onsemi further alleges that LAS's management of its business jeopardized the continued production of and supply of certain critical component products by LAS to onsemi, thereby not appointing FTI as receiver would have caused irreparable harm to onsemi and its customers, which include the United States Department of Defense and private entities in the aerospace, defense, and other industries critical to U.S. national security. Further, onsemi alleges the Defendants have intentionally avoided paying onsemi for more than $35 million of obligations incurred in connection with the operation of the facility, including but not limited to the potential misappropriation of materials purchased by onsemi for the exclusive purpose of manufacturing semiconductor wafers for onsemi, and the potential diversion of associated revenues to Defendant Linear or other associated entities.

J.     onsemi alleges that LAS is in default under the Agreements for failure to hold Sufficient Funds consistent with its obligations in Section 4.6 of the APA, as well as LAS's failure to repay onsemi for onsemi's "Buy on Behalf" efforts.

K.     onsemi alleges that the Defendants have not paid their debts when due and are insolvent or in immediate danger of being insolvent.

L.     onsemi alleges that the Assets are in danger of material injury and waste.

6

M.      The Court finds that proper notice of the Receiver Motion has been provided in accordance with all applicable rules and laws including, without limitation, the Federal Rules of Civil Procedure.

N.      By entering into this Receiver Order, Plaintiff, LAS, Ward, and Receiver preserve any and all claims, rights, actions, causes of action, and defenses. Nothing in the Receiver Order or by agreeing to enter into the Receiver Order shall be construed, expressly, impliedly, or otherwise as an admission of any Party or the Receiver or a waiver of their respective rights, defenses, and remedies.

Plaintiff, the Company, Ward, and FTI have reached an agreement on the terms and conditions of a *Stipulated and Agreed Order Appointing Receiver*. The Court being so advised, hereby **ORDERS** and **DECREES** as follows:

1.      FTI, through Dr. Kushner, Ms. Horton, and Mr. Jenkins, is hereby appointed receiver (the "**Receiver**") through the trial of the matters asserted in the Complaint of, for, and over the Company, and all of the Company's respective assets, business, and affairs (and, as to the Defendants Ward and Linear, solely as such assets, businesses, and affairs relate to the Fab).  FTI is qualified to serve as receiver in this matter and has the requisite experience and qualifications to serve as receiver of the Defendants pursuant to the terms of this Order. The Receiver shall manage, preserve, and protect the Company, its income and profits, its assets and property, and its rights and privileges. While the Receiver shall take possession and control of the Company's Assets and business that relate to LAS, the Receiver shall not take title to any Assets of the Company.

2.      Subject to the limitations contained in this Receiver Order,  the Receiver is hereby granted, authorized, and vested with all of the powers, rights, and duties provided under the United

States Code, the Federal Rules of Civil Procedure, the Local Rules, applicable laws and shall possess all powers, authorities, rights and privileges heretofore possessed by the members, directors, officers, managers and any other control persons of the Company under applicable state and federal law, by the governing charters, by-laws, articles, operating agreements, company agreements, contracts and/or any other agreements concerning the authority to manage or make decisions concerning the Company.  Without limiting the generality of the foregoing, the following provisions, and the powers and authority conveyed therein, apply to the Receiver and this receivership:

    a. **Custody and Control.** The Receiver shall take exclusive custody and control of the Company, including possession of all the funds, property, mail, and other assets of, in the possession of, or under the control of the Company or Defendants Ward and Linear (as to Defendants Ward and Linear, solely as such assets relate to the Fab) (collectively, the "**Assets**"). The Assets of the Company include, without limitation, the following: all real property, inventory, intellectual property, licenses, personal property, equipment, accounts, accounts receivable, Revenues (as defined below), general intangibles, investment property, instruments, documents, bank accounts and amounts therein, and any other property of any nature whatsoever of the Company or Assets in the possession of Defendants Ward and Linear, solely as such assets related to the Fab, and the proceeds and products of the foregoing in whatever form the same may be, wherever located, now existing and hereafter arising or coming into existence. The Receiver may take all steps necessary to secure the business premises and the other Assets of the Company or Assets in the possession of Defendants Ward and Linear solely as such Assets relate to the Fab.

    b. **Protect and Preserve Operations and Assets.** The Receiver may: (i) operate the Company and take all other actions it deems necessary to preserve, protect, and manage the Company, its business, and all Assets in order to preserve their value; (ii) pay all utility expenses or other obligations to suppliers or servicers in the ordinary course of business, including obligations incurred prior to commencement of the receivership so long as the Receiver has determined that it is prudent to do so in order to maintain business relationships that will accomplish the goals of the receivership; and (iii) make repairs necessary to maintain and protect the Assets.

    c. **Collection of Revenues.** The Receiver will collect the profits, rents, revenues, cash flow insurance proceeds, and all other income of any nature whatsoever from the Assets and operation of the Company (collectively, the "**Revenues**"), and shall pay from the Revenues all Receivership Expenses (as defined below). The Receiver has the authority to receive and endorse, present for payment, and/or collect any check,

8

money order, credit card account, or other form of payment payable to either the Company or the Receiver.

d. **Leases and Executory Contracts.** Subject to notice given to Defendants and their opportunity to object, and this Court's approval, the Receiver may cancel any leases or executory contracts of the Company if the performance of any such lease or contract would not be beneficial to the receivership estate. Nothing in this provision affects any rights of parties to rejected or canceled executory contracts or leases to file a proof of claim for damages arising out of such rejection or cancellation, if and to the extent a proof of claim process is implemented by the Receiver in this receivership.  Subject to notice given to Defendants and their opportunity to object, and this Court's approval, the Receiver is permitted to assign leases and executory contracts as permitted by the terms of such contracts or leases.

e. **Receivership Expenses.** The Receiver may incur and pay out of the Revenues such expenses and obligations coming due after the date of the Receiver's appointment as may be necessary or appropriate for the maintenance, protection, or preservation, or operation of the Company's business or the Assets, or that are incurred in carrying out the directions set forth in this Order or other orders of this Court (collectively, the "**Receivership Expenses**"). The Receivership Expenses include, without limitation, all taxes and assessments, insurance premiums for property, casualty, liability and other essential insurance, utility expenses, operating expenses, lease obligations, wages, management fees, and compensation to the Receiver and any professionals retained by the Receiver, including attorneys' fees. To the extent the Revenues cannot satisfy the expenses and obligations coming due after the date of the Receiver's appointment, onsemi may fund (at its sole discretion) the payment of the Receivership Expenses without the need for further Court Order and onsemi shall be entitled to reimbursement for such Receivership Expenses in priority to other claims, except as otherwise provided by law.  Notwithstanding the above, to the extent the Revenues cannot satisfy the expenses and obligations coming due after the date of the Receiver's appointment, onsemi shall fund the compensation to the Receiver and any professionals retained by the Receiver, including attorneys' fees, as approved by the Court.

f. **Pre-receivership Liabilities.** The Receiver and the receivership estate are not liable for any expenses, accounts payable, or other claims that were incurred prior to the effective date of this Order. Notwithstanding the foregoing or anything in this Order that may be construed to the contrary, in the Receiver's discretion, the Receiver may (but is not required to) pay those expenses, accounts payable, or claims incurred in the normal and ordinary course of business prior to this Order (including, without limitation, tax, lease, payroll, employee benefit, utility, and vendor obligations) to the extent that the payment of any such pre-existing expense, account payable, or claim is necessary or desirable for the preservation of the Assets.  In addition, subject to the terms of this Receiver Order or further Court orders, the Receiver shall not be required to use any Revenues collected after the Receiver takes possession of the Assets for payment of any expenses, accounts

payable or other obligations with regard to the Assets incurred prior to the Receiver's taking possession of the Assets.

g. **Bank Accounts.** The Receiver shall take immediate possession, control, management, and charge of all deposit, checking, savings, banking, and money management accounts relating to the Company; change the name on any such existing account into the Receiver's name; relocate, at the Receiver's discretion, any such existing account to a new financial institution; and open and maintain deposit accounts in the Receiver's name. All institutions, banks, saving and loans, depositories, credit unions, brokerage accounts, and other financial institutions where any such accounts are located are directed to deliver such deposits and such records (including any information required by a bank or financial institution or financial or depository institution to enable the Receiver to take exclusive control over any and all accounts, such as access to online banking) as the Receiver may reasonably request with respect to such deposits and accounts to the Receiver. The Receiver shall ensure that the accounts are covered by FDIC insurance.

h. **Investment of Funds.** The Receiver may invest any excess cash in one or more interest-bearing accounts with a state or national financial institution, so long as such accounts are insured by the Federal Deposit Insurance Company.

i. **Sale of Assets.** Upon the motion of the Receiver, the Court may authorize the Receiver to sell any or all Assets, other than in the ordinary course of business, after notice and an opportunity to object has been given to interested parties. The Receiver has discretion, subject to opportunity to object by Defendants and this Court's approval, to determine how to sell the Assets so as to maximize the value thereof. Except as otherwise authorized in any order approving the sale, all sale proceeds shall be retained by the Receiver and only distributed in accordance with further orders of this Court. The Receiver is authorized to dispose of those items, without modification and as currently constituted that the Receiver determines to have a "de minimus" value of less than $5,000.00 to the receivership by way of donation to a charitable organization or in a casual sale, as the Receiver may deem reasonable. Nothing in this paragraph limits the authority of the Receiver to sell Assets in the ordinary course of business, which, for the avoidance of doubt, may occur without notice to parties in interest and/or prior approval of the Court.

j. **Employment of Professionals.** The Receiver may choose and employ, upon notice and Court approval, professionals (the "**Receiver Professionals**") as the Receiver deems advisable or necessary in the performance of the Receiver's duties and responsibilities under the authority granted by this Order, and on the terms and conditions as the Receiver determines to be in the best interests of the receivership estate. If the estate does not have sufficient funds to cover the expenses, and onsemi fails to fund such expenses, the Receiver may seek orders from the Court to impose a charge on the Assets to cover outstanding amounts.

k. **Lawsuits and Settlements.** The Receiver may initiate, defend, participate in, or take any action in law or equity that the Company may have, and may additionally initiate or take action upon any claims that would normally be reserved for creditors of a company to recover assets allegedly fraudulently transferred, including, without limitation, actions arising under Chapter 1336 of the Ohio Revised Code and/or other applicable fraudulent transfer law. The Receiver may settle any claims of the Company or against the Company in the Receiver's reasonable business judgment and without Court approval.

l. **Books.** The Receiver shall prepare and maintain complete books, records, and financial reports of the income and expenses associated with this case, and all other appropriate records.

m. **Mail.** The Receiver shall have the right to issue demands in the name of the receivership upon U.S. Postal Service, or any other public or private entity, to gain exclusive possession and control of such postal boxes as are or may have been used by the Company, its owner(s), and any person or entities acting at their direction or under their control for the receipt of rent, income, and other mail or packages related to the Company. The Receiver is authorized to open all mail (including all email), open packages, and receive all faxes and other communications addresses to or from the Company, its owner(s), and any persons or entities acting at their direction or under their control concerning the Company, and received at the Company, in any postal box(es) or elsewhere. Nothing in this Receiver Order shall be construed as an express, implied, or inadvertent waiver of the attorney-client privilege or work product doctrine and all such materials shall be preserved by the Receiver and not disseminated or disclosed outside of the Company.

n. **Receivership Tax Returns.** The Receiver will prepare and file any tax returns related to the receivership estate as may be required by law. Nevertheless, the Receiver shall not be responsible for the preparation and filing of any tax returns for the Defendants or any affiliates (including income, personal property, commercial activity, gross receipts, sales and use, or other tax returns) other than to provide the Defendants with information in the Receiver's possession that may be necessary for the Defendants or their affiliates to prepare and file their returns. The Defendants shall provide to the Receiver any information needed to file any tax returns for the receivership estate.

o. **Other Actions.** The Receiver may do all such other things are or may be, in the Receiver's judgment, reasonable, necessary, or usual for the protection, possession, control, management, operation, lease, and sale (but only pursuant to the terms, and subject to the limitations, of this Order) of the Company, its business, and/or the Assets.The Receiver shall take reasonable actions to comply with all laws known by the Receiver to be applicable to the operation of the Assets including laws of the United States, the State of Ohio, the State of Idaho, and otherwise.

3.     Upon request of onsemi, the Receiver shall provide a budget for the operation of the Company and the Assets for the period of up to one year from the date of this order.

4.     Any person, including but not limited to the Defendants, provided notice of this Order must immediately, or within such time period set forth by the Receiver in writing, cooperate with the Receiver in the transition of the management of the Company, its business operations, and all other Assets, and shall turnover, deliver, or otherwise make available to the Receiver:

    a.  Possession and custody of the Assets;

    b.  Possession and custody of documents of the Company, including but not limited to, all books and records of accounts, all financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, and check registers), vendor lists, customer lists, title documents, and other papers, wherever located, as the Receiver deems necessary for the proper administration, management, or control of the receivership estate;

    c.  All keys, computer passwords, entry codes, PIN numbers, and combinations to locks necessary to gain or to secure access to any of the Assets or documents of the Company, including but not limited to, access to the Company's business premises, means of communication, accounts, computer systems, and other property;

    d.  Information identifying the accounts, employees, properties or other assets or obligations of the Company;

    e.  All pending contracts;

    f.  All insurance policies;

    g.  All documents pertaining to safety and environmental laws, together with all reports, surveys, inspections, orders, citations, warnings, and notices regarding the same;

    h.  Site plans, surveys, specifications, floor plans, drawings, and measurements related to any Assets;

    i.  All technical manuals related to any Assets; and

    j.  Such other records related to any Assets as may be reasonably requested by the Receiver.

5.      The Defendants shall turnover any and all Assets of the Company, or related to the Assets to the Receiver.  The Defendants and their members, managers, officers, employees, independent contractors, agents and representatives shall fully cooperate with Receiver and shall take all steps necessary to comply with this Order and other orders of the Court, and with all applicable law and/or rules and are enjoined from interfering with the use, management, possession, control, and liquidation of the Assets by Receiver.

6.      The Defendants and their members, managers, directors, officers, agents and employees are prohibited from removing any Assets and diverting any income.

7.      The Defendants shall fully cooperate with Receiver in adding Receiver and onsemi as an additional insured, and the Receiver and onsemi as the loss payee, on all insurance policies relating to the operation and management of the Assets, including but not limited to the Fab, including, but not limited to insurance for: fire, extended coverage, vehicle coverage, property damage, liability, fidelity, errors and omissions, and workers' compensation, and modifying the policies if deemed appropriate by the Receiver. The Defendants and their members, managers, directors, officers, independent contractors, employees and agents are prohibited from canceling, modifying, reducing, or otherwise changing any and all insurance coverage in existence with respect to the Assets.  The Receiver, upon and after reasonable consultation with onsemi, may cancel such insurances that are deemed obsolete or unnecessary to the protection of the Assets or burdensome to the operation of the Company or its Assets.

8.      Except upon and to the extent of leave granted by this Court, or upon and in accordance with the express instructions of the Receiver, the Company,  and its owners, members, managers, directors, officers, employees and agents, and any and all persons acting or purporting to act on behalf of the Company, including, without limitation, Mr. Ward, are enjoined and

prohibited from taking, attempting to take, and retaining possession of, and/or otherwise exercising control over, the Company, its business and any Assets, and are prohibited from diverting from the Company any Assets or any income related thereto.

9.      Receiver shall take possession and control of and receive from any and all insurance, brokerage or service entities any and all insurance policies, brokerage accounts, investment accounts, trading platforms or investment property of all kinds and natures that the Company owns (legally, equitably or beneficially, collectively, the "Investment Assets"). Receiver is hereby authorized to cancel, maintain or change any aspect of any such Investment Assets in its sole discretion, after consultation with onsemi.

10.     Upon the request of specific information by Ward (through counsel), the Receiver shall take reasonable efforts to provide Ward (through counsel) with access to or a copy (the form of which will be determined in the Receiver's sole discretion) of the requested records.

11.     Except upon and to the extent of leave granted by this Court, during the pendency of the receivership ordered herein, all creditors, claimants, political entities, parties in interest, sheriffs, marshals, and other officers, and their respective attorneys, servants, agents, and employees, and all other persons, firms, and corporations, are enjoined and stayed from taking any action to establish or enforce any claim, right, or interest for, against, on behalf of, and/or in the name of the Company, the Assets, Receiver, and/or the Receiver's duly authorized agents acting in their capacities as such. The injunction set forth in this paragraph includes, without limitation, a prohibition of the following actions:

   a. Commencing, prosecuting, litigating, continuing, or enforcing any suit against the Company, or that in any way may affect or impact the Assets and/or any rights, claims, or interests of the Company, except that actions may be filed to toll any applicable statute of limitations so long as such action is immediately stayed;

b. Accelerating the due date of any obligation or claimed obligation, enforcing any lien upon, or taking or attempting to take possession of, or retaining possession of, any of the Assets, or any property claimed by the Company, or attempting to foreclose, forfeit, alter or terminate any of the Company's interests in property, whether such acts are part of a judicial proceeding or otherwise;

c. Using self-help or executing or issuing, or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process, including but not limited to non-judicial foreclosures, for the purpose of impounding, taking possession of, interfering with, or creating or enforcing a lien upon any property, wherever located, owned by or in the possession of the Company, the Receiver, or any agent of the Receiver; and

d. Doing any act or thing to interfere with the Receiver taking control, possession, or management of the property subject to the receivership, or to in any way interfere with the Receiver in the performance of its duties, or to interfere with the jurisdiction of this Court over the property and assets of the Company.

12.     In accordance with Rule 66.1 of this Court's Local Rules, within sixty (60) days after the entry of this Receiver Order, the Receiver shall file an inventory (the "**Inventory**") of all the property and assets in the receiver's possession, or in the possession of others who hold possession as his or her agent, and in a separate schedule an inventory of the property and assets of the estate not reduced to possession by the receiver but claimed and held by others.  Within 30 days after the filing of the Inventory and every 30 days thereafter, the Receiver shall continue to file reports (the "**Reports**") of the receivership's receipts and expenditures and acts and transactions by the Receiver acting in an official capacity on a monthly basis.  Each Report shall be filed within 20 days after the last day of the month to which such Subsequent Report relates.

13.     The Receiver and the Receiver Professionals shall owe duties only to the receivership and the Court.  The Receiver's retention of the law firm of Tucker Ellis, LLP as its attorneys is hereby approved.

14.     The Receiver and the Receiver Professionals are entitled to reasonable compensation for the performance of services relating to this receivership, and for the cost of actual

and reasonable out-of-pocket expenses incurred by them relating to such services. Fees of the Receiver and Receiver Professionals will be paid ahead of all other administrative expenses out of the assets of the receivership estate, notwithstanding any lien rights of creditors.  The Receiver will be compensated in accordance with the rates attached to the Kushner Declaration as Exhibit C to the Receiver Motion.

15.     In accordance with Rule 66.1(c) of the Court's Local Rules, the compensation of the Receiver, the Receiver Professionals, and all those who may have been appointed by the Court to aid in the administration of the estate, the conduct of its business, the discovery and acquisition of its assets, the formation of reorganization plans, and the like, shall be ascertained and awarded by the Court in its discretion, upon application made in accordance with the appropriate local rules.

16.     Notwithstanding anything else contained in this Order, the Receiver, and its counsel, are entitled to monthly interim compensation, according to the hourly fees and other terms and conditions set forth in Exhibit C to the Receiver Motion and the terms of this Order. Specifically, on or after the fifth day of each month following the month for which compensation is sought, each receivership estate professional seeking compensation may file an application (each, a "**Monthly Fee Statement**") for interim allowance of compensation for services rendered and reimbursement of expenses incurred during the preceding month, and serve such Monthly Fee Statement, on (i) onsemi; (ii) the Defendants; and (iii) any other party in interest that has filed a notice of appearance in this action (each, an "**Application Recipient**" and collectively, the "**Application Recipients**"). Any Professional that fails to file a Monthly Fee Statement for a particular month or months may subsequently submit a Monthly Fee Statement that includes a request for compensation earned or expenses incurred during the previous months. Each Application Recipient will have until 4:00 p.m. (Prevailing Eastern Time) 21 days after service of

a Monthly Fee Statement to review the request ("**Objection Deadline**"). The Objection Deadline shall be conspicuously noted on the Monthly Fee Statement. Upon the expiration of such 21-day period, if no Application Recipient has filed with the Court, an Objection (defined below), a receivership professional may file a certificate of no objection with the Court with respect to the unopposed portion of the fees and expenses requested in its Monthly Fee Statement (each, a "**CNO**"). After a CNO is filed with the Court, the Receiver is authorized to pay the professional an amount (the "**Actual Monthly Payment**") equal to 80% of the fees and 100% of the expenses requested in the applicable Monthly Fee Statement (the "**Maximum Monthly Payment**") that are not subject to an objection.  If any Application Recipient objects to a Monthly Fee Statement, the objecting party shall, within 21 days of service of the Monthly Fee Statement, serve a written notice upon the respective Professional and each of the Application Recipients (the "**Notice of Objection to Monthly Fee Statement**") setting forth the precise nature of the objection and the amount at issue. Thereafter, the objecting party and the Professional shall attempt to resolve the objection on a consensual basis. If the parties reach an agreement, the Receiver shall promptly pay 80% of the agreed-upon fees and 100% of the agreed-upon expenses. If, however, the parties are unable to reach a resolution of the objection within fourteen days after service of the Notice of Objection to Monthly Fee Statement, the objecting party shall file its objection (the "**Objection**") with the Court within three business days and serve such Objection on the respective professional and each of the Application Recipients. Thereafter, the professional may either (i) file with the Court a response to the Objection, together with a request for payment of the difference, if any, between the Maximum Monthly Payment and the Actual Monthly Payment made to the affected Professional (the "**Disputed Amount**") or (ii) forego payment of the Disputed Amount until the next hearing on an Fee Application or Final Fee Application (each as defined herein), at which

time the Court will consider the Objection, if requested by the parties.  Each professional may submit its first Monthly Fee Statement on or after February 7, 2025. This initial Monthly Fee Statement will cover the period from the entry of this Order through January 31, 2025. Thereafter, the professionals may file Monthly Fee Statements in the manner described above.

17.     Beginning with the period ending on February 28, 2025 and at three-month intervals thereafter (the "**Fee Period**"), each of the professionals may file and serve on the Application Recipients a fee application (each, an "**Fee Application**") for compensation and reimbursement of expenses sought in the Monthly Fee Statements served during such period. Each Professional shall serve notice of its Fee Application (which identifies the professional seeking compensation, discloses the period for which the payment of compensation and reimbursement of expenses is being sought, and describes the amount of compensation and expenses sought) on all parties that have entered their appearance. The Fee Application should conform to the requirements of the Local Rules of this Court. Application Recipients will have 21 days after service of a Fee Application to object thereto ("**Fee Application Deadline**"). The Fee Application Objection Deadline shall be conspicuously stated on the respective Fee Application. The first Fee Application should cover the Fee Period from the entry of the Temporary Receiver Order through and including February 28, 2025.

18.     The Receiver shall request that the Court schedule a hearing on Fee Applications at least once every three months or at such other intervals as the Court deems appropriate.  The Court, in its discretion, may approve an uncontested Fee Application without the need for a hearing upon the professional's filing of a CNO.  Upon allowance by the Court of a professional's Fee Application, the Receiver shall be authorized to promptly pay such professional all allowed fees (including the 20% holdback) and expenses not previously paid.  A pending Objection to payment

of compensation or reimbursement of expenses will not disqualify a professional from the future payment of compensation or reimbursement of expenses under this Order. Neither (i) the payment of or the failure to pay, in whole or in part, compensation for services and reimbursement of expenses under these compensation procedures nor (ii) the filing of or the failure to file an Objection to any Monthly Fee Application or Fee Application will bind any party in interest or the Court with respect to the allowance of compensation.

19.     Notwithstanding anything in its Engagement Letter or this Order to the contrary, FTI shall apply any remaining amounts of its pre-appointment special purpose retainer, if applicable, as a credit toward post-appointment fees and expenses, after such post-appointment fees and expenses are approved pursuant to an order of the Court awarding fees and expenses to FTI. FTI is authorized without further order of the Court to reserve and apply amounts from the pre-appointment special purpose retainer that would otherwise be applied toward payment of post-appointment fees and expenses as are necessary and appropriate to compensate and reimburse FTI for fees and expenses incurred on or prior to appointment consistent with its ordinary course billing practices.

20.     Notwithstanding anything to the contrary in the Kushner Declaration, FTI's Engagement Letter, or the Declarations attached to the Receiver Motion, the reimbursement provisions allowing the reimbursement of fees and expenses incurred in connection with participating in, preparing for, or responding to any action, claim, suit, or proceeding brought by or against any party that relates to the services provided under the Engagement Letter and fees for defending any objection to FTI's fee applications under the Local Rules are not approved pending further order of the Court.

21.     To the extent the Revenues cannot satisfy the professional expenses and obligations coming due after the date of the Receiver's appointment, consistent with FTI's Engagement Letter, onsemi has agreed to, and shall, fund the payment of the professional fees and onsemi shall be entitled to reimbursement for such Receivership Expenses in priority to other claims, except as otherwise provided by law.

22.     No bond shall be required to be posted by the Receiver.  The Receiver may nevertheless, in its sole and exclusive discretion, obtain a bond or other coverage in such amounts and at such costs as the Receiver reasonably deems necessary.  The costs of such bond or other coverage shall be paid in the manner specified in the Order for the payment of other costs of the Receiver.

23.     Except to the extent of the Receiver's bond to the Court, if any, the Receiver and its employees, agents, and attorneys shall have no liability whatsoever to any party in this case, third parties, and any other party, person, or entity for any claims, losses, liabilities, or damages arising out of the performance by the Receiver of the Receiver's duties under this Order, except for claims due to their gross negligence, willful misconduct, malicious acts, and/or the material failure to comply with this Court's orders.

24.     The Receiver and its employees, agents, and attorneys shall have no personal liability in connection with any environmental claims, liabilities, obligations, liens, or amounts owed to any of the Company's creditors because of its duties as Receiver and/or because of the services provided to the Receiver and/or relating to this receivership. Receivership Expenses, obligations, liabilities, or risks incurred by the Receiver in connection with the maintenance, preservation, or operation of the Company's business or the other Assets, or in the performance or fulfillment of its duties, are not and shall not become the personal expenses, obligations, liabilities,

or risks of the Receiver; rather, they are exclusively the expenses, obligations, liabilities, and risks of the receivership estate.

25.     This receivership shall continue until further order of this Court, unless, however, the Receiver (upon five (5) business days' notice to the Parties and their counsel and this Court and the Receiver's turning over the Assets, funds held pursuant hereto and related records) resigns for non-payment of the Receiver's compensation and expenses or that of its attorney.  If so, such resignation shall be immediately effective.

26.     Within 30 days of termination of the receivership or the removal or resignation of the Receiver, the Receiver shall file a final accounting with copies to the parties designated in the paragraph above.

27.     The Receiver may resign as receiver by giving thirty (30) days advance written notice to this Court and to the Parties and their counsel.  Upon giving such notice and approval by this Court of a final accounting of the Receiver's duties hereunder, and the Receiver's turning over of the Assets, funds held pursuant hereto and related records, the Receiver shall be released and discharged from further obligations hereunder and the Receiver's bond – if still in place – may be cancelled.

28.     The Receiver may be removed (1) automatically 30-days after filing of a written demand for removal signed by onsemi's counsel and filed with the Court or (2) in the Court's equitable discretion upon a motion for cause filed by any Party, which motion shall not be governed by Federal Rule of Civil Procedure 60.  If the Receiver is removed, a successor receiver may be appointed on an expedited basis by motion filed by onsemi requesting the appointment of a successor receiver and after a hearing on such motion if requested by Defendants.

29.     Immediately upon termination of the receivership or resignation of the Receiver, the Court shall determine and direct to whom the Receiver shall turnover all of the Assets.

30.     Only after the Court approves the Receiver's final accounting may the Receiver be discharged, except as provided herein.

31.     The Receiver may seek direction from this Court on any matter related to this Order, including, but not limited to, relief from or modification of the provisions of this Order.

32.     The Receiver may seek such other and further orders of this Court as it deems necessary or expedient to carry out its duties and responsibilities under this Order.

33.     The reversal or modification on appeal of this Order shall not affect the validity of any actions taken in good faith by the Receiver, the payment of compensation to which the Receiver or Receiver Professionals are entitled, or the payment of expenses incurred by the Receiver or Receiver Professionals pursuant to this Order.

34.     onsemi shall, in its sole discretion, and without need for Court approval, make advances, but shall not be required to make advances, for payment of the following expenses in aid of the Receiver:

     a.  Security for the Assets;

     b.  Utilities for the Receivership Property, including gas, electric, telephone, and water;

     c.  Insurance for the Assets;

     d.  Diligence relating to the marketing and disposition of the Assets;

     e.  Taxes of any kind or nature accruing during the receivership required to be paid on the Assets by the statutes of the United States or any state political subdivision or any governmental agency;

     f.  Expenses for the operation and maintenance of the Company, including but not limited to undertaking any construction, repairs, maintenance or alterations of the Receivership Property;

22

g. Expenses for attorneys, accountants, or other agents employed by the Receiver; provided, however, this Order shall control with respect to counsel for the Receiver; and

h. Any other expenses of the receivership estate, subject to any approval procedures imposed in this Order or by this Court.

35. Any and all monies advanced by onsemi for Receivership Expenses shall become expenses of the administration of the receivership accruing interest until refunded at the federal judgment interest rate, and shall be refundable directly to onsemi, without further Court Order, and shall be secured by a first priority security interest in all of the Assets, all without the need for any filing for perfection or action by onsemi of any kind to provide notice of such security interest.

36. The Receiver is authorized to take all actions necessary to effectuate this Receiver Order.

37. The Parties reserve any and all rights, claims, defenses, rights of setoff, rights of recoupment, and/or arguments they may have as it relates to the allegations in the Complaint.

38. This Receiver Order and the injunction contained within shall be in full force and effect as of the date and time it is entered by the Court.

39. This Order and the Receiver's appointment shall remain in full force and effect until further order of this Court. This Court retains jurisdiction with respect to this matter for all purposes.

40. The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

**IT IS SO ORDERED.**

2/19/2025
_____                    _____
**Date**                                    **HONORABLE SARA LIOI**
                                            **CHIEF JUDGE**
                                            **UNITED STATES DISTRICT COURT**

23

AGREED TO BY:

/s/ Christopher B. Wick
Christopher B. Wick (0073126)
Philip K. Stovall (0090916)
HAHN LOESER & PARKS LLP
200 Public Square, Suite 2800
Cleveland, OH 44114
Telephone:     216-621-0150
Facsimile:     216-241-2824
E-mail:          cwick@hahnlaw.com
                    pstovall@hahnlaw.com

and

Lorenzo Marinuzzi (admitted *pro hac vice*)
Andrew Kissner (admitted *pro hac vice*)
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019-9601
Telephone:     212-468-8000
Facsimile:     212-468-7900
E-mail:          lmarinuzzi@mofo.com
                    akissner@mofo.com
*Attorneys for Plaintiff Semiconductor Components Industries, LLC*

/s/ Nicholas P. Capotosto
Nicholas P. Capotosto (0076436)
Jenna J. Pletcher (0103338)
DINSMORE & SHOHL LLP
1200 E. Market St., Suite 530
Akron, OH 44305
Telephone:     330-572-1999
Facsimile:     330-572-1998
E-mail:          nick.capotosto@dinsmore.com
                    jenna.pletcher@dinsmore.com

*Attorneys for Defendants LA Semiconductor LLC and Mike Ward*

/s/ William J. Stavole
William J. Stavole (40828)
Anna L. Gecht (0095689)
Izaak Horstemeier-Zrnich (0101085)
TUCKER ELLIS LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113
Telephone:     216-592-5000
Facsimile:     216-592-5009
E-mail:          william.stavole@tuckerellis.com
                    anna.gecht@tuckerellis.com
                    izh@tuckerelis.com
*Attorneys for Receiver FTI Consulting, Inc.*

NO OBJECTION TO BY:

/s/ Christopher J. Niekamp
Christopher J. Niekamp (0051221)
Jude B. Streb (0071529)
Justin S. Greenfelder (00779247)
Erin L. Dickinson (0079321)
Buckingham, Doolittle & Burroughs, LLC
3800 Embassy Parkway, Suite 300
Akron, OH 44333
Telephone:     330-258-6470
Facsimile:      330-258-6470
E-mail: cniekamp@bbdlaw.com
          jstreb@bbdlaw.com
          jgreenfelder@bbdlaw.com
          edickinson@bbdlaw.com

*Attorneys for Linear Asics Inc.*