UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SEMICONDUCTOR COMPONENTS INDUSTRIES, LLC, | ) ) ) | CASE NO. 5:24-cv-2215 |
| Plaintiff, | ) ) | CHIEF JUDGE SARA LIOI |
| vs. | ) ) ) | |
| | ) ) | **MEMORANDUM OPINION AND ORDER** |
| LA SEMICONDUCTOR LLC, *et al.*, | ) ) | |
| Defendants. | ) ) | |

Plaintiff Semiconductor Components Industries, LLC ("Onsemi") and defendants LA Semiconductor LLC ("LAS"), Linear ASICs Inc. ("Linear"), and Mike Ward ("Ward") are embroiled in a complex dispute concerning the sale and subsequent operation of a semiconductor wafer manufacturing facility. (*See* Doc. No. 1 (Verified Complaint); Doc. No. 71 (Counterclaims).) The parties agreed to the appointment of FTI Consulting, Inc. as receiver (the "Receiver") to oversee the operation of LAS while this case proceeds. (Doc. No. 48 (Stipulated and Agreed Order).) Non-party Titus Weinheimer—a former employee of LAS—seeks relief from the receivership order to the extent it stays litigation against LAS. (*See* Doc. No. 67.) The Receiver and Onsemi oppose the motion (*see* Doc. No. 73; Doc. No. 74), and Weinheimer replied. (*See* Doc. No. 76.) Because the equites do not favor lifting the stay at this juncture, Weinheimer's motion is **DENIED without prejudice**.

## I.    BACKGROUND

Several years ago, Onsemi sold a semiconductor wafer manufacturing facility to LAS. (Doc. No. 1 ¶ 2; Doc. No. 71, at ¶¶ 5–12.) From the get-go, the relationship between Onsemi and

LAS has been acrimonious. Onsemi alleges that, for nearly two years, it has propped up LAS by paying almost all of its expenses. (*See, e.g.*, Doc. No. 1 ¶¶ 2–4; Doc. No. 71 ¶¶ 15–18.) In this lawsuit, Onsemi claims LAS, Linear, and Ward breached various agreements, misrepresented financial information, and improperly diverted assets. (Doc. No. 1 ¶¶ 106–49.) For their part, LAS and Ward deny any wrongdoing and claim that Onsemi has breached the parties' agreements in several ways. (Doc. No. 71 ¶¶ 19–49.)

Given the nature of the allegations and the potential for irreparable harm, the Court appointed the Receiver to oversee LAS. Initially, the Receiver was appointed on a temporary basis (Doc. No. 7, at 15)[1], but the parties have since agreed that the Receiver should remain in place during this case. (Doc. No. 48, at 23.)

The Receiver's mandate is to "manage, preserve, and protect [LAS.]" (*Id.* at 7.) To facilitate that goal, the receivership order bars any person from "[c]ommencing, prosecuting, litigating, continuing, or enforcing any suit against [LAS], or that in any way may affect or impact [LAS's assets] and/or any rights, claims, or interests of [LAS], except that actions may be filed to toll any applicable statute of limitations so long as such action is immediately stayed[.]" (*Id.* at 14.)

Weinheimer seeks relief from that litigation injunction to arbitrate a severance dispute. All parties agree that Weinheimer stopped working for LAS shortly after the Receiver took control of the company. But they disagree about the terms of his separation, the authenticity of Weinheimer's purported severance agreement, and Weinheimer's entitlement to benefits under that agreement. (*See, e.g.*, Doc. No. 73, at 2, 6.) According to Weinheimer, those disputes are subject to arbitration—a proceeding currently barred by the receivership order. (Doc. No. 67, at 2, 4.) He

---

[1] All page number references are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

asks that the Court "allow him to intervene in this action and grant him relief []," so that he can "proceed with his severance claims against LAS[.]" (*Id.* at 4.)

## II.    DISCUSSION

### A.    Intervention

Before turning to the injunction, a brief word on Weinheimer's request to intervene. Weinheimer "moves under [Rule 24] to intervene as of right and obtain relief from the injunction[.]" (Doc. No. 67, at 1.) Onsemi argues that Weinheimer should not be permitted to intervene in this case, invoking the factors traditionally applied in the Rule 24 context. (Doc. No. 74, at 2–5 (citing *Blount-Hill v. Zelman*, 636 F.3d 278, 283 (6th Cir. 2011).) Neither Weinheimer nor the Receiver addresses those factors. (*See* Doc. No. 67; Doc. No. 73.) And courts differ on how they apply Rule 24 (if at all) when evaluating a request to lift a litigation injunction. *Compare, e.g.*, *Huntington Nat'l Bank v. Sakthi Auto. Grp. USA, Inc*., No. 2:19-cv-10890, 2020 WL 4016073, at *1–2 (E.D. Mich. July 16, 2020) (not applying traditional Rule 24 factors) *and Orlowski v. Bates*, No. 2:11-cv-01396, 2014 WL 12771522, at *2–6 (W.D. Tenn. Feb. 11, 2014) (separately analyzing motion to lift injunction and motion to intervene), *with S.E.C. v. Callahan*, 2 F. Supp. 3d 427, 435–39 (E.D.N.Y. 2014) (applying traditional Rule 24 factors as threshold analysis).

In this context, the Court concludes that satisfying the traditional Rule 24 factors is unnecessary. Weinheimer's motion to "intervene for the limited and sole purpose of seeking a modification or lifting of the stay of litigation against the receivership" is not a "conventional motion[] to intervene." *United States v. Petters*, No. 08-cv-5348, 2008 WL 5234527, at *2 (D. Minn. Dec. 12, 2008). Weinheimer, for example, does not seek to assert a claim or defense in this case. *See* Fed. R. Civ. P. 24(c). Instead, his limited purpose is to seek relief so that he can pursue his claim in another forum.

Because of the limited scope of Weinheimer's motion, "the analytical framework established by Rule 24 does not lend itself well to resolving the issues presented" and the Court will not "force the factual allegations presented by [Weinheimer] into the analytical framework of Rule 24[.]" *Petters*, 2008 WL 5234527, at *2. Instead, "a practical, commonsense application of Rule 24 suggests intervention for the limited purpose sought by [Weinheimer] is appropriate here." *Id.* at *2. Indeed, to conclude otherwise would be to contradict the terms of the receivership order, which contemplates a non-party bringing a claim "upon and to the extent of leave granted by this Court from the stay." (Doc. No. 48, at 14.) *See Petters,* 2008 WL 5234527, at *2 ("[I]f, as the movants [] apparently have assumed, the granting of a motion to intervene for the limited purpose of requesting relief from the stay is a threshold event that must occur before a nonparty can actually request that the stay be lifted, it would betray the stated intent of the order staying litigation to now deny, under the guise of Rule 24, such nonparties the ability to move the Court for relief from the stay."). Accordingly, for this limited purpose, Weinheimer may intervene.

**B.      Relief from the Litigation Stay**

Weinheimer seeks relief from the litigation injunction in two ways. He argues that the Court lacks the authority to enjoin him from arbitrating his claim. (Doc. No. 67, at 3.) And even if the Court does have the power to issue an injunction, Weinheimer asks the Court to allow him to pursue his claim anyway because "[i]ts resolution will not affect the Receiver's administration of LAS's business." (*See id.* at 3–4.) The Court, then, must address two issues: (1) whether the litigation injunction is a legitimate exercise of the Court's equitable power, and (2) if so, whether the stay should be lifted to permit Weinheimer to arbitrate his claim.

1. *The Court has the Authority to Enter a Litigation Stay*

Start with the Court's equitable authority. In his motion, Weinheimer asserts that "there is no legal basis" for the litigation injunction (Doc. No. 67, at 3), although he appears to abandon that argument in his reply. (*See* Doc. No. 76.) In any event, his argument runs up against precedent. The Sixth Circuit has explained that "[o]nce assets are placed in receivership, a district court's equitable purpose demands that the court be able to exercise control over claims brought against those assets." *Liberte Cap. Grp., LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006). Because the "receivership court has a valid interest in both the value of the claims themselves and the costs of defending any suit as a drain on receivership assets" it may "issue a blanket injunction, staying litigation against the named receiver and the entities under his control unless leave of that court is first obtained." *Id*. (citing *Barton v. Barbour*, 104 U.S. 126, 128, 26 L. Ed. 672 (1881) ("It is a general rule that before suit is brought against a receiver leave of the court by which he was appointed must be obtained.")).  That "power extends to the institution of any suit, and not just a proceeding for execution of a judgment against the receivership in the receivership court." *Id*. (citing *Barton*, 104 U.S. at 129 ("We think, therefore, that it is immaterial whether the suit is brought against [the receiver] to recover specific property or to obtain judgment for a money demand. In either case leave should first be obtained.")).

The Court acknowledges that *Digital Media Sols., LLC v. S. Univ. of Ohio, LLC*, 59 F.4th 772 (6th Cir. 2023), although cited by neither party, may cast some doubt on the Court's power here. In *Digital Media*, the Sixth Circuit reviewed a settlement agreement premised on an "unprecedented" bar order, which permanently forbid certain non-settling parties from pursuing personal liability claims against parties not under receivership control. *Id.* at 776, 781. In determining that the district court lacked the power to issue such an order, the panel explained

"that a receivership court could not enjoin a creditor's suit against the debtor itself if the suit sought only an in personam judgment." *Id.* at 780 (citations and emphasis omitted). That proposition is hard to square with the *Liberte* court's conclusion that a "receivership court may issue a blanket injunction, staying litigation against the named receiver and the entities under his control unless leave of that court is first obtained[,]" including the "institution of any suit, and not just a proceeding for execution of a judgment against the receivership in the receivership court." *Liberte,* 462 F.3d at 551. The Supreme Court has similarly concluded that "it is immaterial whether [a] suit is brought against [a receiver] to recover specific property or to obtain judgment for a money demand. In either case leave should be first obtained." *Barton*, 104 U.S. at 129.

To the extent those holdings conflict, the Court follows *Liberte*. For one, *Liberte* predates *Digital Media*, and therefore controls. *See Stewart v. Trierweiler*, 867 F.3d 633, 638 (6th Cir. 2017) (relying on the older decision "[t]o resolve [the] Janus-like dilemma" when two Sixth Circuit decisions "look in opposite directions"). For another, other district courts in the circuit have issued broad anti-litigation injunctions relying on the authority described in *Liberte*. *See, e.g.*, *Huntington Nat'l Bank*, 2020 WL 4016073, at *1–2; *Orlowski*, 2014 WL 12771522, at *2–3.  For another still, the issue in *Digital Media*—whether a non-party could be prevented from suing another non-party on a permanent basis—is different than the issue in this case. The injunction here is temporary, runs only against the receivership entities, and is necessary to ensure the receivership's limited assets are not depleted defending satellite lawsuits. (Doc. No. 48, at 14–15.)

Neither Weinheimer's status as a non-party nor the potential of arbitration change the Court's conclusion. *See, e.g.*, *Liberte*, 462 F.3d at 551–52 (holding that district courts have the power to stay claims brought by non-parties); *S.E.C. v. Stanford Intern. Bank Ltd.*, 424 F. App'x 338, 341 (5th Cir. 2011) ("Since a district court has the power to enjoin other courts, it follows

that it has the power to enjoin arbitration[.]"). If Weinheimer could avoid the litigation injunction because he is a non-party or because he seeks to arbitrate his claim, it would undermine the Receiver's "important job of marshaling and untangling [the] company's assets without being forced into court by every investor or claimant." *Huntington Nat'l*, 2020 WL 4016073, at *2 (citation and quotation marks omitted).

Alternatively, Weinheimer argues that the litigation stay runs afoul of the Federal Anti-Injunction Act, 28 U.S.C. § 2283. (Doc. No. 67 at 3.) But the Anti-Injunction Act "only prohibits injunctions against *pending* state court proceedings; [it] does not preclude injunctions against the institution of state court proceedings." *Tropf v. Fid. Nat. Title Ins. Co.*, 289 F.3d 929, 941 (6th Cir. 2002) (emphasis in original) (citing *Dombrowski v. Pfister*, 380 U.S. 479, 485 n.2, 85 S. Ct. 1116, 1120, 14 L. Ed. 2d 22 (1965)). Moreover, "where an arbitration proceeding is private and voluntary, and the state courts have not become involved, and may never become involved, in the proceeding, the Anti–Injunction Act does not apply." *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 398 (6th Cir. 1997). Those limitations lead to two problems for Weinheimer's argument: no parallel proceeding has begun, and, even if it had, it would be in arbitration, not state court. Accordingly, the Anti-Injunction Act is inapplicable.

The litigation injunction is a valid exercise of the Court's equitable authority.

### 2. *The Stay Should Not Be Lifted*

Weinheimer also argues—albeit briefly—that the stay should be lifted because "resolution" of his severance claim in arbitration "will not affect the Receiver's administration of LAS's business." (Doc. No. 67, at 4.) The Receiver disagrees and contends that "the equitable factors show that the Motion to Lift Stay should be denied as premature." (Doc. No 73, at 5.)

It is Weinheimer's burden to show that the stay should be lifted. *See Huntington Nat'l Bank*, 2020 WL 4016073, at *1; *United States v. JHW Greentree Cap., L.P.*, No. 3:12-cv-00116, 2014 WL 2608516, at *4 (D. Conn. June 11, 2014) (collecting cases). In considering whether to lift a receivership litigation injunction, a district court may consider such factors as (1) litigation costs as a tax on the receivership estate, (2) the ability of the parties to resolve their claims in the receivership court versus elsewhere, (3) any culpability on the part of the claimant, and (4) the implications for any satisfaction of an award on other claimants to the estate. *Liberte*, 462 F.3d at 552–53. Those factors help the Court to evaluate "the merits of the individual claim and the equities attendant to the situation[.]" *Id.* at 552.

In light of those factors, Weinheimer has not convinced the Court that they stay should be lifted.[2] To start, litigating Weinheimer's claim at this juncture will "tax [] the receivership estate[.]" *Liberte*, 462 F.3d at 552; *Huntington*, 2020 WL 4016073, at *1 (considering "whether refusing to lift the stay genuinely preserves the status quo" (citing *SEC v. Wencke*, 742 F.2d 1230, 1231 (9th Cir. 1984)). As the Receiver points out, allowing arbitration of Weinheimer's claim "would impose substantial costs, in terms of time, issue complexity, and money, on the Receivership estate." (Doc. No. 73, at 5.) Although arbitration is "often cheaper" than traditional litigation, *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505, 138 S. Ct. 1612, 200 L. Ed. 2d 889 (2018), it is not free. Even arbitration will likely lead to significant costs—in the form of filing fees, attorney's fees, preparation

---

[2] In his motion, Weinheimer offers a few short, conclusory paragraphs explaining why the equites favor lifting the stay. (*See* Doc. No. 67, at 3–4.) None of those paragraphs, however, explicitly invoke the *Liberte* factors. (*See id.*) "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to [] put flesh on its bones." *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (citation and quotation marks omitted). To be sure, Weinheimer more explicitly addresses equitable factors in his reply brief. (Doc. No. 76, at 2–10.) But in doing so he improperly advances several arguments and factual contentions for the first time. *See Toth v. Ford Motor Co.*, No. 1:08-cv-391, 2008 WL 11380224, at *1–2 (N.D. Ohio Sept. 18, 2008) ("'Raising the issue for the first time in a reply brief does not suffice; reply briefs reply to arguments made in the response brief—they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration.'" (quoting *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008)). Nonetheless—even considering Weinheimer's more developed arguments—the Court concludes the stay should not be lifted.

expenses, and the arbitrator's hourly rate.[3] And those expenses will likely swell here, as it appears the parties have multiple points of disagreement. At bottom, "requiring the Receiver to defend lawsuits"—whether in litigation or arbitration—will "drain[] receivership assets[.]" *Huntington*, 2020 WL 4016073, at *2 (cleaned up); *United States v. Acorn Tech. Fund, L.P.*, 429 F.3d 438, 443 (3d Cir. 2005) ("A district court should give appropriately substantial weight to the receiver's need to proceed unhindered by litigation, and the very real danger of litigation expenses diminishing the receivership estate.").

Weinheimer pushes back on that conclusion, arguing that "there is no reason to delay the resolution of [his] claim" because arbitration can be conducted without interfering with the receivership. (Doc. No. 76, at 9–10.) His argument, however, overlooks the Court's valid interest in not only "the value" of Weinheimer's claim, but also "the costs of defending any suit as a drain on receivership assets[.]" *Liberte*, 462 F.3d at 551. Here, arbitration would create a "very real danger of litigation expenses diminishing the receivership estate." *Acorn Tech. Fund*, 429 F.3d at 443; *Orlowski*, 2014 WL 12771522, at *3 ("The Receiver's argument regarding the cost of individual litigation and its potential to drain the assets of the Receivership is well-taken.").

Moreover, the parties' ability to resolve Weinheimer's claim in arbitration does not favor lifting the stay. *Liberte*, 462 F.3d at 552–53. Weinheimer seems to suggest that because LAS (and, in turn, the Receiver) are bound to arbitrate, the stay should be lifted. (Doc. No. 76, at 4.) But the stay is necessary to protect the receivership from a satellite dispute, no matter where that dispute occurs. Even assuming (without deciding) the Receiver must arbitrate Weinheimer's claim, that does nothing to answer the relevant question of when arbitration should occur. As discussed above,

---

[3] *See, e.g.*, *Arbitration Schedule of Fees and Costs*, JAMS, https://www.jamsadr.com/arbitration-fees (last visited Aug. 5, 2025).

the receivership will be impacted whether the parties' claims are resolved in arbitration or elsewhere.

Finally, by Weinheimer's telling, LAS has only "$1.7 million in the bank" (*id.* at 9), so allowing Weinheimer to arbitrate his claim and obtain an award may have "implications for [] satisfaction of an award on other claimants to the estate." *Liberte* Capital, 462 F.3d at 553. Weinheimer alleges that he is owed a lump-sum payment of either $1,250,000 or $2,500,000, in addition to an extended period of salary. (Doc. No. 76, at 13–14.) Paying that sum would no doubt impact the ability of any other creditors—including Onsemi—to collect based on LAS's limited liquid assets. As a middle ground, the Court could permit Weinheimer to arbitrate the merits of his claim and defer enforcement of any judgment he may receive. *Liberte*, 462 F.3d at 552. Even then, though, the arbitration costs would affect—if not hamper—the Receiver's efforts to "manage, preserve, and protect the Company, its income and profits[.]" (Doc. No. 48, at 7.)

Beyond the *Liberte* factors, other considerations point toward leaving the stay in place. *S.E.C. v. Universal Fin.*, 760 F.2d 1034, 1037–38 (9th Cir. 1985) (cited favorably in *Liberte*, 462 F.3d at 552); *S.E.C. v. One Equity Corp.*, 2010 WL 4878993 (S.D. Ohio Nov. 23, 2010) (considering whether to lift receivership stay by evaluating "(1) [w]hether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed; (2) the time in the course of the receivership at which the motion for relief from the stay is made; and (3) the merit of the moving party's underlying claim" (quoting *SEC v. Wencke*, 742 F.2d 1230, 1231 (9th Cir. 1984)).

For one, the receivership is still quite new, having first been established eight months ago (*see* Doc. Nos. 7, 48), and LAS's financial position remains uncertain. *See, e.g.*, *Huntington Nat'l Bank*, 2020 WL 4016073, at *2 (keeping stay in place when receivership was only "in effect for a

10

year" and "the Receiver [was] still in the process of organizing and understanding the entities"); *Acorn Tech. Fund*, 429 F.3d at 443–44 ("[V]ery early in a receivership even the most meritorious claims might fail to justify lifting a stay given the possible disruption of the receiver's duties.").

For another, Weinheimer has not demonstrated that he will incur a substantial injury if the temporary injunction remains in place. *See Universal Financial*, 760 F.3d at 1037–38. Weinheimer argues that Onsemi "is attempting to secure preferential treatment to satisfy its claims to the detriment of LAS's other creditors, including [Weinheimer]." (Doc. No. 67, at 3.) It is true, as Weinheimer points out, that Onsemi is likely a creditor of LAS, as it is providing nearly all funding for LAS's operations. (Doc. No. 76, at 3; Doc. No. 81, at 12 (Receiver's Tenth Status Report).) Onsemi, however, has not secured a judgment or received anything from LAS at this early stage. As this case progresses and the Receiver has a chance to stabilize LAS's operations, all creditors—Weinheimer included—will have an opportunity to assert and determine the priority of their claims in this forum or another. *Petters*, 2008 WL 5234527, at *4 ("Without question . . . there will come a time for those claiming an interest in assets subject to the receivership to make arguments regarding what preferences those interests should have in the distribution scheme."). But "[n]ot being allowed the first bite at the apple is not the kind of substantial injury" that justifies lifting the stay. *Acorn Tech. Fund*, 429 F.3d at 449.

On the contrary, allowing the receivership to continue unabated may inure to Weinheimer's benefit. The Court understands Weinheimer's desire to be paid any severance he may be due as soon as possible. But even assuming Weinheimer's claim has merit and that he has priority over other creditors, there is no guarantee LAS has the money to satisfy a substantial judgment. As the receivership progresses, LAS's financial position may stabilize or improve. Because of that "the Receiver's task to marshal, preserve and conserve the receivership estate is as much for

11

[Weinheimer's] benefit as for the benefit of all of the other investors[.]" *Stanford Int'l Bank Ltd.*, 424 F. App'x at 341; *Zacarias v. Stanford Int'l Bank, Ltd.*, 945 F.3d 883, 895–96 (5th Cir. 2019) ("Without a receiver, investors encounter a collective-action problem: each has the incentive to bring its own claims against the entity, hoping for full recovery; but if all investors take this course of action, latecomers will be left empty-handed. A disorderly race to the courthouse ensues, resulting in inefficiency as assets are dissipated in piecemeal and duplicative litigation. The results are also potentially iniquitous, with vastly divergent results for similarly situated investors.").

Certainly, some considerations support lifting the stay. For example, by Weinheimer's telling, the severance agreement was created long before the receivership came into existence and was triggered when the Receiver placed him on leave. (Doc. No. 76, at 27.) That is at least a colorable claim, and while the Receiver and Onsemi squabble with the merits of Weinheimer's allegations, the Court must accept those allegations as true in this posture. *See Adams-Gillard v. Sedgwick Claims Mgmt. Servs., Inc.*, No. 2:21-cv-2038, 2022 WL 969628, at *2 (W.D. Tenn. Mar. 30, 2022) ("[A] district court is required to accept as true the nonconclusory allegations made in support of an intervention motion." (citation and quotation marks omitted)); *Acorn Tech. Fund*, 429 F.3d at 444 ("[W]hen it is asked to lift a stay it would usually be improper for a district court to attempt to actually judge the merits of the moving party's claims at such an early point in the proceedings.").

Even so, those considerations do not tip the scale in Weinheimer's favor at this early stage. Indeed, courts generally do not delve into other factors like the merit of a movant's claim when other considerations weigh heavily in favor of leaving the stay in place—as is the case here. *See, e.g.*, *Huntington Nat'l Bank*, 2020 WL 4016073, at *2; *Schwartzman v. Rogue Int'l Talent Grp., Inc.*, No. 12-cv-5255, 2013 WL 460218, at *3 (E.D. Pa. Feb. 7, 2013).

III.     **CONCLUSION**

At this juncture, allowing Weinheimer to arbitrate his claim against LAS would hamper the receivership. Accordingly, Weinheimer's motion to lift the stay is **DENIED without prejudice**. The Court recognizes that "an appropriate escape valve, which allows potential litigants to petition the court for permission to sue, is necessary so that litigants are not denied a day in court during a lengthy stay." *Acorn Tech. Fund*, 429 F.3d at 443. And, "with time, the balancing between the parties may change, such that modifying the stay would be possible." *Stanford Int'l Bank Ltd.*, 424 F. App'x at 342. Accordingly, Weinheimer may renew his motion as the case proceeds and the receivership stabilizes. To that end, the Court will consider a renewed motion to intervene in 150 days. In the meantime, the Court will add Weinheimer to the docket as an interested party to ensure he receives notice of important events in this case.

**IT IS SO ORDERED**.

Dated: August 14, 2025

_____
**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**